JOHN DOE, *ex demise* of JAMES HARRISON *et al.*, plaintiffs in error, *vs.* RICHARD ROE, casual ejector, and JAMES YOUNG, tenant, in possession, defendants in error.

The statute of limitations as to realty having been suspended in Georgia from December 14th, 1861, to the 1st day of January, 1863, as heretofore decided by this Court, adverse posession, under claim of title, from January 1862, until October 16th, 1869, is not a sufficient length of time to perfect a statutory title.

Statutory title. Statute of limitations. Adverse possession. Before Judge STROZIER. Worth Superior Court. November Term, 1871.

John Doe, on the demises of James Harrison, Thomas Legg and Joel R. G. Horne, brought ejectment against Richard Roe, casual ejector, and James Young, tenant in possession, for lot of land situate in the sixth district of originally Irwin now Worth county, being number three hundred in said district, containing four hundred and ninety acres, more or less. Benjamin Willis was made a party defendant at the trial term.

Upon the trial plaintiff introduced the following evidence:

1st. Plat and grant to James Harrison, dated December 10th, 1819.

2d. Deed from James Harrison to Thomas Legg, dated May 1st, 1835, and transfer of said deed from said Legg to Joel R. G. Horne, dated on November 8th, 1837.

The defendants introduced:

1st. Deed from Alexander Lewis to Henry Edwards, dated June 12th, 1848.

2d. Deed from Henry Edwards to Green B. Mayo, dated February 10th, 1859.

3d. Deed from Green B. Mayo to Benjamin Willis, dated March 3d, 1860.

4th. Deed from Benjamin Willis to James Young, dated November 22d, 1862, for one hundred acres of the premises in dispute, lying on the east side of a certain branch known as "Cypress Branch."

Harrison *et al. vs.* Young.

The defendant, Benjamin Willis, testified that in 1862 or 1863, a house was built on the land by James Young; that he also cleared a few acres on one corner of the lot, not far from the line; that Young left the lot one summer, and no one lived there in his absence; that the house was near the corner of the lot; that Mr. Gibbs lives on the adjoining lot, about half a mile from the house.

The defendant, James Young, testified that in January, 1862, he made a small inclosure on the lot and built a house; that he lived there about one month and then moved about three miles off; that no one lived on the lot until witness returned, which was in January, 1863; that defendant built a few hog pens near the house to feed hogs in when they were having pigs; that there were a few rails on the place, and also a loom which defendant left in the house; that the line of lot three hundred and one, adjoining the land in dispute, is not quite one hundred yards from the house; that the reason defendant left the place in 1862 was because the soldiers were volunteering, and he could consequently obtain no assistance in his improvements; that Mr. Willis let him have the land to which he moved to cultivate; that he kept his hogs on the land in dispute; that they stayed about in the woods; that in the summer of 1862 defendant made a deadening on the place.

The jury returned a verdict for the defendants, whereupon plaintiff moved for a new trial upon the following grounds, to-wit:

1st. Because the verdict of the jury was contrary to evidence and the principles of justice and equity.

2d. Because the jury found contrary to the following charge of the Court, "the jury must be satisfied, from the evidence, that the defendant went into possession of the lot in dispute in good faith and under a claim of right and written evidence of title, and held possession publicly, continuously and exclusively, and that his possession must be evidenced by inclosure, cultivation or some other use and occupation of it, which is so notorious as to attract the attention of every adverse claimant, and so exclusive as to prevent actual posses-

sion by another, and that he continued in such possession for seven years prior to the filing of the declaration in the clerk's office."

3d. Because the Court refused to give in charge the following request, "that if they believe, from the evidence, that Young went into possession of the land under a verbal gift, in January, 1862, and built a cabin in one corner of the lot, not quite one hundred yards from the line of the adjoining lot, and lived there about one month and then voluntarily left said house and remained out of possession, and lived some three miles from the land until January, 1863, then I charge you, that the time he remained so out of possession cannot be added to his subsequent possession to enable him to set up his statutory title."

4th. Because the Court refused to charge the following request, "that possession to be adverse and ripen into a title, must be continuous and public, and evidenced by such use and occupation so notorious as to attract the attention of every adverse claimant, and such as to give the true owner notice that the land is claimed adversely, (and who that adverse claimant is.") The portion in brackets refused.

5th. Because the Court erred in charging the jury, "that if the defendant left the house and land, and lived three miles from the land from February, 1862, to January, 1863, but left any property in the house, the house locked up, such holding and possession of the house was exclusive, and the owner would have had no right to have gone in and taken possession, and if he had done so, he could have been ejected."

6th. Because the Court erred in charging the jury, "that when a party voluntarily abandons the land, the statute ceases to run. Abandonment means a moving off the land without any intention of returning, which intention may be demonstrated by acts, which acts may be taken into consideration in ascertaining such intention."

7th. Because the Court erred in charging the jury, "that constructive possession of lands, is where a person having paper title to a tract of land is in actual possession of only a

Harrison *et al. vs.* Young.

part, and if the defendants had a deed to this whole tract of land, a possession of any portion of the same in the manner explained to you is possession of the entire tract "—this charge being inapplicable to the facts of this case.

8th. Because the jury found contrary to the following charge of the Court, " that if defendant held such adverse possession, as has been explained to you, of any portion of the lot of land under a deed, then the adverse possession extended to the metes and bounds specified in the deed."

Upon the motion for a new trial, the Court passed the following order :

" It is ordered and adjudged by the Court, that a new trial be refused as to the one hundred acres in the deed from Benjamin Willis to James Young, and a new trial be granted as against Benjamin Willis for the balance of the premises in dispute."

To which ruling plaintiff in error excepted, and assigns the same as error.

L. P. D. WARREN; HINES & HOBBS; CLARK & GOSS, for plaintiffs in error.

D. H. POPE, for defendants.

MONTGOMERY, Judge.

This action was brought against Young for lot number three hundred, in the sixth district of Worth. Young, it seems, went into possession in January, 1862, by permission of Willis, who held a deed to the lot dated prior to that time.

Young built a house, in one corner of the lot, deadened a few acres, and shortly after left the land, but in about a year after re-entered under a deed from Willis to one hundred acres of the lot, the whole lot containing over four hundred acres, and remained in possession until suit brought on the 16th day of October, 1869. At the trial term Willis was made a co-defendant. The lot was wild land, never having been occupied prior to Young's going into possession. Plain-

tiff showed a perfect chain of title from the State to himself. The defense relied on was adverse possession under color of title for seven years. The jury found for defendants, and, on motion, the Court granted a new trial as to Willis, but refused it as to the one hundred acres held by Young. This refusal is excepted to.

The decision of this Court in 38 *Georgia* 442, that the statute of limitations was suspended as to realty, from the 14th day of December, 1861, to the 1st day of January, 1863, must control the case. It therefore becomes unnecessary to decide whether Young has been continuously in possession, under the evidence, from January, 1862, until the bringing of the suit, and the other questions made in the record. Conceding that he was so in possession, the time is not sufficient, under the suspension of the statute of limitations, to perfect the statutory title relied on, and the judgment of the Court below, refusing a new trial as to Young, must be reversed.